**JUDGE FAILLA  14 CV 8584**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARBLEGATE ASSET MANAGEMENT, LLC,
MARBLEGATE SPECIAL OPPORTUNITIES
MASTER FUND, L.P., MAGNOLIA ROAD
CAPITAL LP, and MAGNOLIA ROAD GLOBAL
CREDIT MASTER FUND L.P.,

                            Plaintiffs,

-against-

EDUCATION MANAGEMENT CORPORATION,
EDUCATION MANAGEMENT LLC, and
EDUCATION MANAGEMENT FINANCE CORP.,

                            Defendants.

Civil Action No. _____



RECEIVED OCT 28 2014 U.S.D.C. S.D. N.Y. CASHIERS

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Marblegate Asset Management, LLC and Marblegate Special Opportunities Master Fund, L.P. (collectively, "Marblegate"), and Magnolia Road Capital LP and Magnolia Road Global Credit Master Fund L.P. (collectively, "Magnolia Road"), for their complaint against defendants Education Management Corporation ("Parent EDMC"), its subsidiaries Education Management LLC and Education Management Finance Corp. (together with Parent EDMC, the "Defendants" and, together with all of Parent EDMC's subsidiaries, the "Company") respectfully state:

### Nature of the Action

1.     Plaintiffs Marblegate and Magnolia Road are the beneficial owners of approximately $20 million of outstanding unsecured notes issued by the Company, which become due in 2018 (the "Notes").

1

2. Plaintiffs have commenced this action to enjoin Defendants from consummating a proposed restructuring of the Company's debt and assets—which Defendants concede will transfer away substantially *all* of the Company's assets, thereby impairing Plaintiffs' ability to receive *any* payment on the Notes. In the Company's words: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[1] This is a plain violation of Plaintiffs' rights under Section 316(b) of the Trust Indenture Act and the indenture under which the Notes were issued, which provide that Plaintiffs' ability to receive payment on the Notes, or to sue for enforcement of such payment, may not be impaired without their express consent. The Trust Indenture Act forbids an issuer of qualified notes from escaping payment of its debts through a restructuring of this nature. The Company, accordingly, should be enjoined from consummating the Proposed Restructuring and the Intercompany Sale.

### The Parties

3. Plaintiff Marblegate Asset Management, LLC is a Delaware limited liability company with its principal place of business at 80 Field Point Road, Suite 101, Greenwich, Connecticut 06830. It serves as the investment adviser to Plaintiff Marblegate Special Opportunities Master Fund, L.P.

4. Plaintiff Marblegate Special Opportunities Master Fund, L.P. is a Cayman Islands limited partnership that is organized and maintains its registered office at 20 Genesis Close, dms House, Grand Cayman KY1-1108, Cayman Islands.

---

[1] Exhibit A, Confidential Offering Circular, Education Management Corporation Offer to Exchange (Oct. 1, 2014) (the "Offering Circular") at p. 28.

5.   Plaintiff Magnolia Road Capital LP is a Delaware limited partnership with offices at 660 Madison Avenue, Suite 1725, New York, New York 10065. It serves as the investment adviser to Plaintiff Magnolia Road Global Credit Master Fund L.P.

6.   Plaintiff Magnolia Road Global Credit Master Fund L.P. is a British Virgin Islands limited partnership that maintains its registered office at Harneys Corporate Services Limited, Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, British Virgin Islands VG1110.

7.   Upon information and belief, Defendant Parent EDMC is a Pennsylvania corporation with its principal place of business at 210 Sixth Avenue, Pittsburgh, Pennsylvania. Upon information and belief, Parent EDMC is the most senior entity in the Company's corporate structure.

8.   Upon information and belief, Defendant Education Management LLC is a Delaware limited liability company with its principal place of business at 210 Sixth Avenue, 33rd Floor, Pittsburgh, Pennsylvania.

9.   Upon information and belief, Defendant Education Management Finance Corp. is a Delaware corporation with its principal place of business at 210 Sixth Avenue, 33rd Floor, Pittsburgh, Pennsylvania.

## Jurisdiction and Venue

10.   The Court has jurisdiction over the claims asserted in this action pursuant to 15 U.S.C. §§ 77vvv(b) and 77v(a), and 28 U.S.C. §§ 1331, 1367(a), and 2201.

11.   Venue is proper in this district pursuant to 15 U.S.C. §§ 77vvv(b) and 77v(a), and 28 U.S.C. § 1391(b) and (c).

12.   This Court is an appropriate venue for this action because this dispute arises out of the terms of an indenture which, upon information and belief, was negotiated and signed in

New York, and which is governed by New York law. Further, Plaintiff Magnolia Road and, upon information and belief, Defendants, have offices or operations in New York City, New York.

**The Company**

13. According to the Company's public filings, it has been in operation for over 40 years, and is among the largest for-profit providers of post-secondary education in North America.

14. As of October 2013, the Company reports having approximately 125,560 enrolled students in 110 schools located across the United States and Canada.

15. According to the Company, its schools offer both online and campus-based education in a variety of fields, including the arts and humanities, business, law, psychology and behavioral sciences, health sciences, and more.

16. As of June 30, 2014, the Company reported having 20,800 employees, with net revenues for fiscal years 2011 through 2014 ranging from $2.3 billion to $2.9 billion.

**The Company's Debt Structure as of June 30, 2014**

17. As of June 30, 2014, the Company had $1.5 billion of indebtedness outstanding, consisting of $1.3 billion outstanding under its senior secured credit facility (the "Senior Credit Facility"), comprised of approximately $1.1 billion of term loans (the "Term Loans") and $220 million drawn on a revolving credit facility (the "Revolving Loans," collectively, with the Term Loans, the "Secured Loans").

18. In addition to the Secured Loans, as of June 30, 2014, the Company had outstanding approximately $203 million of senior unsecured notes due 2018 (the "Notes").

19. Plaintiffs own approximately $20 million of the Notes.

20. The Notes were issued pursuant to an indenture dated March 5, 2013 (the "Indenture") by and among Defendants Education Management LLC and Education

4

Management Finance Corp. as issuers (the "Issuers"), Defendant Parent EDMC and several of its subsidiaries as guarantors (the "Guarantors"), and The Bank of New York Mellon Trust Company, N.A., as trustee (the "Trustee"). A copy of the Indenture is attached hereto as Exhibit B.

21. Pursuant to Section 12.08 of the Indenture, the Indenture, the Notes and any guarantee of the Notes are to be governed by and construed in accordance with the laws of the State of New York.

22. Pursuant to Section 10.01 of the Indenture, the Guarantors guaranteed the Notes.[2]

23. Upon information and belief, as of June 30, 2014, Parent EDMC held approximately $50.7 million of cash—and, at that time, Parent EDMC was *not* a guarantor of the Secured Loans.

### The Company's Closed-Door Negotiations to Restructure its Debt

24. In May 2014, the Company made known that it did not anticipate being in compliance on June 30, 2014 with the maximum total leverage ratio and minimum interest coverage ratio financial covenants under the Senior Credit Facility.

25. Shortly thereafter, upon information and belief, the Company began debt restructuring negotiations with a select group of its creditors who, upon information and belief, consisted of lenders who owned Secured Loans and lenders who owned both Secured Loans and Notes (collectively, the "Cross-Debt Creditors").

26. Through their closed-door discussions, the Cross-Debt Creditors and the Defendants agreed to restructure the Company primarily at the expense of those holders of Notes who did not also own Secured Loans (the "Proposed Restructuring"). This agreement, at least in

---

[2] Section 10.01 of the Indenture also provides for the Guarantors to pay all costs and expenses, including attorneys' fees, incurred by the Trustee or a holder of Notes in enforcing any rights under the Section.

part, is memorialized in a Restructuring Support Agreement dated September 4, 2014 (the "Restructuring Support Agreement"). A copy of the Restructuring Support Agreement is attached hereto as Exhibit C.

27. According to the Company's recent public filings, the basic terms of the Proposed Restructuring are as follows:

 a. <u>Senior Credit Facility Restructuring</u>: $150 million of the Revolving Loans will be repaid in cash at par, with such amount available for re-borrowing under a new revolving credit facility. The remaining portion of the outstanding Senior Credit Facility and two interest rate swaps will be exchanged for (i) two first lien senior secured term loans due July 2, 2020 in the aggregate principal amount of $400 million and (ii) a combination of mandatorily convertible and optionally convertible preferred stock, in the aggregate amount of approximately 77% of the Company's common stock (subject to some dilution by warrants and a management incentive plan).[3] Also, as part of the Proposed Restructuring, in September 2014, Parent EDMC purports to have provided a secured guarantee of the Secured Loans.

 b. ███████████████████████████████████████████████████████████████████████████████████████

---

[3] *See, e.g.*, Restructuring Support Agreement. In addition, the collateral proceeds "waterfall" for the Senior Credit Facility was amended such that the obligations under the Senior Credit Facility owing to the Cross-Debt Lenders and any other secured lender, if any, supporting the Proposed Restructuring were made senior to the obligations of any secured lender not supporting the Proposed Restructuring. *See, e.g.*, EDMC 2014 10-K at p. 4.

███████████████████████████████[4]█████████
██████████████████████████████████████████
██████████████████████████████████████████

c. <u>Equity Retention</u>: Parent EDMC's current shareholders will (i) retain approximately 4% of the restructured Company stock, and (ii) receive Class B warrants.

**The Intercompany Sale**

28. If any of the Holders of Notes decline to participate in the Exchange Offer, the Restructuring Support Agreement obligates the Company to nevertheless proceed with the Proposed Restructuring over such Holder's objections by consummating an intercompany sale, which the Company contends could, but need not, be implemented under Article 9 of the Uniform Commercial Code (the "<u>Intercompany Sale</u>").

29. ████████████████████████████████████████
████████████████[5].

30. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████

---

[4] Upon information and belief, in or about September 2014, 86.4% of the Holders of then outstanding Notes exchanged their Notes for a like principal amount of PIK Notes, payable in kind (rather than cash) for the two interest periods ending September 30, 2014 and March 30, 2015 (the "<u>Interim Notes</u>"). Plaintiffs were not part of the 86.4% of Holders that exchanged their Notes. Since then, the Company generally refers to the original Notes as the "Cash Pay/PIK Notes" and refers to the Cash Pay/PIK Notes collectively with the Interim Notes as the "Notes." The Exchange Offer applies to all of the Notes (*i.e.*, in the Company's parlance, the Cash Pay/PIK Notes and the Interim Notes).

[5] *See* Offering Circular.



31. Although the Company has provided very little information as to how exactly it intends to structure the threatened Intercompany Sale, the Company has been very forthcoming about the disastrous impact the Proposed Restructuring and the Intercompany Sale are intended to have on any Holders, including Plaintiffs, who do not tender their Notes.[7]

32. Upon information and belief, as part of the Proposed Restructuring, the Company also intends to release Parent EDMC as one of the Guarantors of the Notes.[8]

33. ███████████████████████████████████████
███████████████████████

---

[6] Offering Circular at p. 3 (emphasis added). ███████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████ Offering Circular at p. 28.
[7] ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███ Offering Circular at p. 16.
[8] See, e.g., Exhibit D, Second Supplemental Indenture executed by Defendants Education Management LLC, Education Management Finance Corp., and Education Management Corporation, among others (Sept. 5, 2014).

8

### The Subsequent Correspondence between Plaintiffs and Defendants

34. On October 9, 2014, following their receipt of the Offering Circular, Plaintiffs wrote to Defendants, reserving their rights and stating, among other things, that (a) they did not intend to tender their Notes under the Exchange Offer, and (b) that the Proposed Restructuring should be abandoned because the terms of the threatened Intercompany Sale are unlawful. In their October 9th letter, Plaintiffs also request advance notice before the Company makes any attempt to consummate the Intercompany Sale. A copy of Plaintiffs' October 9th letter is attached hereto as Exhibit E.

35. On October 14, 2014, Defendants responded to Plaintiffs' letter and confirmed that Defendants intend to proceed with the terms of the Exchange Offer over Plaintiffs' objection, including if necessary consummating the Intercompany Sale. According to Defendants, "[t]here is no viable alternative." A copy of the Company's October 14th letter is attached hereto as Exhibit F.

36. On October 17, 2014, Plaintiffs again wrote to Defendants requesting a meeting to discuss the terms of the Exchange Offer and seeking additional information about the holdings of the Cross-Debt Creditors. A copy of Plaintiffs' October 17th letter is attached hereto as Exhibit G.

37. On October 21, 2014, Plaintiffs wrote to Defendants asserting Plaintiffs' right to receive advance notice of the Intercompany Sale. A copy of Plaintiffs' October 21st letter is attached hereto as Exhibit H.

38. Defendants responded to Plaintiffs by letter that same day, stating that the Company "remains committed to proceed with the restructuring . . . as it described in the Offering Circular dated October 1, 2014 . . . ." A copy of the Company's October 21st letter is attached hereto as Exhibit I. And on the next day, October 22, 2014, the Secured Lenders wrote

to Plaintiffs confirming their intent to proceed with the Intercompany Sale if Plaintiffs do not tender their Notes: "[The] asset sale pursuant to Article 9 [the Intercompany Sale] will proceed on or after October 30, 2014 in the event that the Exchange is not consummated . . . ." A copy of the Secured Lenders' October 22nd letter is attached hereto as Exhibit J.

39. To date, there has been no amicable resolution of this issue and a justiciable controversy exists.

## COUNT I

### (Declaration that the Proposed Restructuring Violates Section 316(b) of the Trust Indenture Act and Section 6.07 of the Indenture)

40. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

41. The terms of the Proposed Restructuring, including the Intercompany Sale, violate Plaintiffs' absolute and unconditional rights to receive payment of the principal and interest due under the Notes or to institute suit for the enforcement of such payment.

42. Pursuant to Section 12.16 of the Indenture, the signatories have qualified the Indenture under the Trust Indenture Act of 1939, as amended, 15 U.S.C. §§ 77aaa-77bbbb.

43. Section 316(b) of the Trust Indenture Act makes clear that Plaintiffs' rights to receive payment on the Notes, or to sue for recovery on the Notes, are absolute rights that may not be impaired without Plaintiffs' consent. The Act states in relevant part:

> [T]he right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security . . . or to institute suit for the enforcement of any such payment . . . shall not be impaired or affected without the consent of such holder[.]

44. The Indenture also incorporates this provision of the Trust Indenture Act in Section 6.07, which states:

> Notwithstanding any other provision of this Indenture, the right of any Holder of a Note to receive payment of principal, premium, if any, and Additional Interest, if any, and interest on the Note . . . or to bring suit for the enforcement of any such payment . . . shall not be impaired or affected without the consent of such Holder.

45. The Proposed Restructuring, including the Intercompany Sale, will impair the Plaintiffs' right to receive payment of the principal or interest on their Notes without their consent, by, among other things, transferring away all of the assets of the Issuers and the Guarantors of the Notes, and releasing Parent EDMC as one of the Guarantors, ███████

███████████████████████████████████████████

███████████████████████████████████████

███████████ Offering Circular at p. 3.

46. Plaintiffs are thus entitled to a declaration that the Proposed Restructuring, including the proposed Intercompany Sale, is unlawful under Section 316(b) of the Trust Indenture Act and Section 6.07 of the Indenture.

## COUNT II

### (Injunctive Relief Barring Defendants from Consummating the Proposed Restructuring, Including the Intercompany Sale)

47. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in paragraphs 1-39 and 41-46 as if fully set forth herein.

48. Plaintiffs do not intend to tender their Notes in the Exchange Offer.

49. Plaintiffs will be irreparably harmed if Defendants are permitted to proceed with the Proposed Restructuring and consummate the Intercompany Sale because, as a practical matter, they will not be able to obtain money damages or payment on their Notes since the Proposed Restructuring and the Intercompany Sale will dispose of all assets belonging to the

Issuers, release the guarantee from Parent EMDC of the Notes, and dispose of all assets belonging to the other Guarantors on the Notes.

50. Because Plaintiffs thus have no adequate remedy at law, they are entitled to injunctive relief enjoining the Defendants and all of their agents, affiliates and subsidiaries from consummating the Proposed Restructuring and the Intercompany Sale.

**Request for Relief**

WHEREFORE Plaintiffs pray for judgment:

    A.    Declaring that the terms of the Proposed Restructuring, including the proposed Intercompany Sale, violate Section 316(b) of the Trust Indenture Act and Section 6.07 of the Indenture;

    B.    Granting preliminary and permanent injunctive relief enjoining the Defendants, and any of their subsidiaries, affiliates or agents, from pursuing or consummating the Proposed Restructuring and the Intercompany Sale;

    C.    Awarding Plaintiffs their costs, disbursements and attorneys' fees in this action; and

    D.    Granting Plaintiffs such other relief as is just and proper.

Dated: October 28, 2014
       New York, New York

                            Sean E. O'Donnell
                            Lucy C. Malcolm
                            AKIN GUMP STRAUSS HAUER & FELD LLP
                            One Bryant Park
                            New York, New York 10036
                            Tel: (212) 872-1093
                            Fax: (212) 872-1002
                            sodonnell@akingump.com

                            *Counsel for Plaintiffs Marblegate Asset Management, LLC, Marblegate Special Opportunities Master Fund, L.P., Magnolia Road Capital LP, and Magnolia Road Global Credit Master Fund, L.P.*